> There being no opposition to the report and recommendation, and on de novo review, the reporter and recommendation be, and the same hereby is granted. So Ordered.
>
> s/ James G. Carr
> Chief Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER L. FORGETTE, | ) | CASE NO. 3:07CV3167 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE CARR |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE PEARSON |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Jennifer Forgette seeks judicial review of the Social Security Administration's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pending are the parties' briefs addressing the merits and Plaintiff's reply. (ECF Nos. 16, 19, 20.) Finding that the decision denying all benefits to Forgette is based upon proper legal standards and supported by substantial evidence, this Court recommends that the Social Security Administration's ("Agency") final decision be affirmed and that the referral to the undersigned Magistrate Judge be terminated.

1

## I. Overview

Forgette has been diagnosed with bipolar disorder with psychotic features.  Although she alludes to certain physical ailments, Forgette acknowledges that her applications for benefits and the Agency denial rested only on her mental impairment.[1]  Alleging that she became disabled as of September 31, 2002 (Tr.15), Forgette testified that she had problems with her temper, nervousness, panic attacks, paranoia, concentration, and manic and depressive episodes.  (Tr. 462, 468, 470, 472.)  Despite contending that she had been disabled since the end of September 2002, Forgette has held several jobs during the time period of her alleged disability.  She worked part-time for Burger King from November 2004 through February 2005; worked 30 hours a week as a telemarketer from June 2005 to February of 2006; and worked, for an unspecified length of time as a housekeeper.  (Tr. 17, 461-62.)

Finding that Forgette's testimony and earnings record confirmed that she was engaged in "substantial gainful activity" during the time she was employed as a telemarketer, the Administrative Law Judge ("ALJ") excluded that time period from his analysis and decision.  (Tr. 17.)  The ALJ's decision regarding Forgette's disability, therefore, addresses only the remaining time period of September 31, 2002 to June 1, 2005, and February 1, 2006 through the date of the ALJ's decision, December 27, 2006.  Forgette did not object to the ALJ's exclusion of the time period while she was employed as a telemarketer.

After reviewing the record as a whole, including: (1) the medical evidence presented; (2) Forgette's testimony and statements made to medical care providers; and (3) the legal standards

---

[1] *See* Plaintiff's Brief, ECF No. 16, note 1 ("As the decision notes, Ms. Forgette did not complain of any physical problems at the hearing.)  (Tr. 20.)

applied, this Court finds that the ALJ relied upon the correct legal standards and reached a decision supported by substantial evidence.

## II. Procedural History

Forgette applied for DIB and SSI, on January 15, 2004. Her applications were denied initially and upon reconsideration. Forgette subsequently requested a hearing before an ALJ. After conducting a hearing on August 17, 2006, the ALJ upheld the denial of DIB and SSI in a decision dated December 27, 2006. The ALJ found that Forgette had not been disabled as defined in the Social Security Act, from September 30, 2002 through December 27, 2006, because either jobs existed in significant numbers in the national economy that Forgette could perform or Forgette was already working as a telemarketer, as noted above. Following the ALJ's denial, the Appeals Council denied review prompting Forgette to timely appeal to this Court. ECF No. 16 at 2.

> Forgette alleges the following three assignments of error:
>
> > a. Whether the decision's stated rationale about residual functional capacity meets the standards of the Sixth Circuit's *Wilson-Bowen-Rogers* cases and the agency's own rules where it failed to recognize that the December 2003, medical source statement was provided by Treating Psychiatrist Funke and not the primary care physician?
> >
> > b. Whether the decision erred in its analysis of State agency psychologist opinion where the decision fails to discuss the specific moderate limitations identified by the psychologist despite the fact that, based on these multiple moderate limitations, the vocational expert testified that there was no other work?
> >
> > c. Whether the decision's evaluation of symptoms meets the pain standards set forth in Social Security's own regulations, where the decision states a presumption against credibility of persons applying for benefits?

*Id.*

### III.  Standard of Review

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. "Substantial evidence is "more than a scintilla of evidence, but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Secy of Health & Human Svcs.*, 667 F.2d 524, 535, 536 (6th cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  See *Her v. Comm'r of Soc. Sec*., 203 F.3d 288, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen v. Bowen*, 800 f.2d 535, 545 (6th Cir. 1986).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  See *Brainard*, 889 F.2d at 681; *Garner v. Heckler,*

4

745 F.2d 383, 387 (6th Cir. 1984).

## IV. Law and Analysis

### 1. Treating Physician Rule, Generally

Forgette claims that the ALJ wrongfully rejected and did not give the appropriate weight to the opinions of her treating physician, psychiatrist Dr. Barbara Funke (also "treating physician"), who opined that Forgette had significant mental limitations. ECF No. 16 at 12-16.

Generally, the ALJ will only be bound by a treating physician opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(D); 20 C.F.R. § 416.927(d). The Sixth Circuit has repeatedly held that the opinions of a treating physician are entitled to great weight and are generally entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *Rogers v. Commission*, 486 F.3d 234, 242 (6th Cir. 2007).

The Sixth Circuit, however, has also maintained that the Secretary may properly reject the opinion of a treating physician where that opinion is not sufficiently supported by medical findings. *Combs v. Commissioner*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc). In *Bogle v. Sullivan*, 998 F.2d 342, 347-348 (6th Cir.1993), the Court held that the Secretary is required to give great weight to the opinion of a treating physician only if that opinion is supported by sufficient clinical findings and consistent with other evidence.

When the treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight is appropriate, including: (1) the length, frequency, nature, and extent of the treatment relationship; (2) the supportability and consistency of the

5

physician's conclusions; (3) the specialization of the physician; and (4) any other relevant factors.

*Id.* Notwithstanding its non-controlling status, there remains a rebuttable presumption that the opinion of a treating physician is entitled to great deference. SSR 96-2p, 1996 WL 374188 at *4.

Furthermore, the ALJ must provide "good reasons" for discounting treating physicians' opinions. *Id.* at *5. The good reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purpose of this procedural aspect of the treating physician rule is that it "let[s] claimants understand the disposition of their cases," and "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).)

The record before the Court includes opinions from various doctors, including: (1) treating physician Dr. Barbara Funke's December 2003 opinion, August 2006 opinion and treatment notes from 2003 until 2006; (2) consulting psychologist Dr. Alice Chambly's opinion; and (3) state agency psychologist Dr. William Benninger's opinion.

### a. December 2003 Treating Physician Opinion

The ALJ's decision mistakenly credits the December 2003 opinion of the treating physician to Forgette's primary care physician. This is undisputed. Forgette claims this mistake prohibited the ALJ from providing a "good reason" for discounting the December 2003 opinion of the treating physician as required by *Wilson*. The Court disagrees.

6

### 1. ALJ's Reasons for Discounting December 2003 Opinion

The ALJ specifically explained that he discounted the opinion because it contradicted other medical evidence in the record. When distinguishing the December 2003 opinion from other medical opinions in the record, the ALJ provided reasons based upon the content of the report, not its author. He pointed out that the treating physician's contemporaneous treatment notes contradicted her December 2003 report. (Tr. 21.) Indeed, the treating physician's own notes indicated that Forgette did not have more than moderate difficulty dealing with stress after her moods were stabilized and that her activities of daily living were not limited. (Tr.21.) Therefore, even though the ALJ may have mistakenly thought the December 2003 report had been written by a different doctor, the ALJ discounted that report only after comparing it to the contemporaneous notes of the presumed controlling medical authority – the treating physician. The ALJ's analysis did not end there. He also contrasted the December 2003 opinion with the medical conclusions of two other mental health physicians issued in 2004.

In May of 2004, a consulting psychologist (Alice Chambly) found that Forgette's medical impairment was severe but not expected to last 12 months. She further found that Forgette had an (1) Affective Disorder that was marked by depressive and manic syndromes and (2) an Anxiety-Related Disorder. Also, she did not find that Forgette's impairment met the "B" or "C" criteria of the Listings. Generally, the consulting psychologist found that Forgette still had some symptoms of her impairment but, with continued treatment, she would become more stable and could return back to work in August of 2004.

Also, in September 2004, a state agency psychologist (William Benninger) found that although Forgette had mild to moderate functional limitations, she could perform simple work

activities in a routine and predictable work environment that did not involve significant public interaction. (Tr. 227, 232.)

## 2. **Harmless Error Analysis**

While error free decisions are preferred, failing to achieve such a high calling is not, alone, grounds for reversal or remand. Forgette would have a compelling basis for remand had the ALJ ignored the treating physician's December 2003 opinion. *Wilson* requires reversal when a treating physician's opinion has been ignored and the ALJ provided no reason for doing so. *Wilson*, 378 F.3d at 544-46 (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). That is not the case here. In the instant matter, the ALJ weighed the content of the December 2003 opinion against the other medical evidence in the record, including the treating physician's own notes, and found the December 2003 opinion contradicted and unsupported.

While far from ignored, it is undisputed that the ALJ mistakenly thought (or at least wrote) that the treating physician's opinion was the work of the primary care physician. It is not entirely clear from the record if the ALJ simply confused the names (i.e. a clerical error) or actually misapprehended the roles played by each physician. Nevertheless, because the opinion of the treating physician is presumed controlling and the ALJ discounted that opinion, the next inquiry is whether or not such procedural failure was harmless, and if harmless the ALJ should be affirmed. *Bass v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007)**.**

Despite misidentifying the name of the physician who wrote the December 2003 opinion,

the ALJ rationalized his rejection of the that opinion by its obvious contradictions with the contemporaneous notes of the treating physician (which the ALJ obviously credited) and the subsequent 2004 opinions of state agency and consulting psychologists, as explained above.  (Tr. 21.)  He provided reasons sufficiently specific to make clear to any subsequent reviewers the weight he attributed to medical opinion and the reasons for that weight, as required by [SSR 96-2p, 1996 WL 374188 at *5](). Careful scrutiny of the medical records confirms that the treating physician's December 2003 opinion was not supported by other evidence in the record and was contradicted by the contemporaneous notes of the treating physician.  Therefore, the ALJ's error was harmless.

### 3. **Forgette's Additional Reasons for Remand or Reversal are Without Merit**

Forgette's Reply urges that the December 2003 report was rejected solely because the author was not believed to be a mental healthcare specialist.  This allegation is not supported by the record.   The ALJ's comment that the putative author was not a mental health expert *explained why the ALJ believed the physician* exaggerated Forgette's condition, rather than *the reason the ALJ rejected that opinion*.  The treating physician issued her December 2003 opinion approximately three months after Forgette had been hospitalized in September of 2003 with increased depression, suicidal thoughts and having burned herself with a cigarette.  Because the December 2003 opinion closely followed this difficut period for Forgette, the ALJ commented that "it was not surprising" that the physician had issued  "this kind of opinion" since Forgette had last been seen in September.[2]  The ALJ explained that the December 2003 opinion reflected

---

[2] The primary care physician advised Forgette to go to a hospital emergency room following a September 26, 2003 visit wherein Forgette had expressed suicidal ideations.  This may have led to the ALJ confusing that doctor's name with the treating physician's who saw

". . . an isolated, brief period of decompensation and all the rest of the evidence suggests significant improvement with ongoing mental health treatment and support since that date." (Tr. 21.)  The ALJ's conclusion is supported by the evidence, notwithstanding the ALJ's mistake in authorship.

Forgette's contention that the ALJ was confused about the timing of the report is not well taken.  As written, the ALJ's decision clearly recognized that the December 2003 opinion *followed* Forgette's September 2003 visit with her primary care physician and her hospitalization.  The ALJ introduced the opinion by describing that it was provided in December 2003  "shortly after the claimant was hospitalized . . ." (Tr. 21.)

Forgette also argues that the ALJ's rejection of the August 2006 treating physician opinion "does not mend" any error regarding the rejection of the December 2003 opinion.  Plaintiff's Reply at 2, [ECF No. 20 at 2](). As stated above, any error was harmless.  Furthermore, the ALJ's rejection of the treating physician's August 2006 opinion because of *its* contradiction by the treating physician's own notes and observations does, in fact, lend credibility to the ALJ's rejection of the December 2003 opinion for similar reasons.  The rejection of both the treating physician opinions also supports the ALJ's suspicion that the opinions were written with a bias toward improving Forgette's chances at being awarded disability benefits rather than objectively reporting her condition.  *See infra* n. 9.

Accordingly, this Court finds that the ALJ provided "good reasons" for discounting the December 2003 treating physician opinion.

---

Forgette in December 2003, after her release.

### b. **August 2006 Treating Physician Opinion**

As stated above, the ALJ also decided against giving controlling weight to the treating physician's August 2006 report. In making that determination, the ALJ again found the opinion to be inconsistent with the treating physician's notes and other evidence in the record. The ALJ explained that the "marked limitation" reflected in the August 2006 report "[wa]s inconsistent with Dr. Funke's own observations . . ., inconsistent with the claimant's testimony about her improved functioning, and hence this opinion is not well-supported or entitled to controlling weight under SSR 96-2p." (Tr. 21.) The ALJ found that, by August 2006, Forgette was not symptom free but that she was generally stable and doing well. (Tr.18-21, 196, 281, 296, 298, 301, 304, 376, 387, 382, 391, 393.) The ALJ's decision was influenced by Forgette's employment at various times since the inception of her alleged disability. (Tr. 18, 20.) The ALJ recognized that Forgette had some difficulties at these jobs (crying, frequent breaks from work and arguments with supervisors), but her performance earned her offers of promotions that she refused. (Tr. 460-61.) The ALJ also noted that Forgette told the treating physician and others at the Zepf Center – the medical facility where Forgette received treatment – that her telemarketing and housekeeping jobs were going well. (Tr. 296, 391, 393.)

In summary, after giving due consideration to them, the ALJ declined to give controlling weight to either of the treating physician's opinions because those opinions failed to rise to the standards established by the treating physician rule. Specifically, (1) the treating physician's own contemporaneous treatment notes and observations; (2) opinions of the state agency psychologist and consulting physician; (3) Forgette's testimony about her improved functioning; and (4) the other objective evidence presented to the ALJ, taken as a whole, were collectively in

sharp contrast to the December 2003 and August 2006 opinions, leaving those opinions unsupported by the evidence in the record.

This Court finds that the ALJ properly considered the opinions of the treating physician. (Tr. 21 ¶¶2 and 3.)  And, after completing an analysis compliant with Agency regulation SSR 96-2p, the ALJ appropriately decided against giving the treating physician's December 2003 and August 2006 opinions[3] controlling weight, because each were not consistent with that same physician's contemporaneous treatment notes and/or observations[4] and other substantial evidence in the record[5] that indicated that Forgette was doing reasonably well as time progressed.  (Tr. 21).  *See also*, Bogle v. Sullivan, 998 F.2d 342, 347 - 348.

Accordingly, the ALJ provided  "good reasons" for not giving the treating physician's opinions controlling weight.[6]

---

[3] In the treating physician's 2003 and 2006 opinions, she indicated that Forgette has several areas with marked limitation. (Tr. 157, 416.)

[4] In the treating physician's treatment notes, she observed Forgette's level of functioning [appeared normal] and her response to medication was positive. (Tr.18-21, 196, 281, 296, 298, 301, 304, 376, 387,382, 391, 393.)

[5] The ALJ refers to Forgette's testimony about her improved functioning.  And, the ALJ also noted improvements in that the treating physician rated Forgette's GAF as 55 and increased Forgette's dosage of Seroquel (mood stabilizing medication) suggesting *a moderate* rather than marked limitation.  Further, Forgette's condition had improved when she was next seen by the treating physician and her medication dosage was not changed in January of 2006.  (Tr. 21.)

[6] Forgette alleges that, in cases that were awaiting ruling before another branch of this Court at the time Forgette filed the instant matter, the ALJ assigned to the instant matter made several "mistakes" regarding the weight given treating physician's opinions; scrutiny given opinions of state psychologist; and the language used in the ALJ's credibility analysis.(ECF No. 16 at 16,18 -19) (referring to *Fitzpatrick v. Comm'r*, No. 3:07-cv-2087 and *Shadix v. Comm'r*, No 3:07-cv-1886.)  In each of those cases, the Court affirmed the ALJ's denial of benefits and made no mention of the "mistakes" alleged by plaintiff.

**2. State Agency Physician/Non-Examining Physician**

Forgette claims that the ALJ wrongfully rejected the "moderate limitations" finding of the state agency psychologist, Dr. Benninger. Although a non-examining medical advisor's opinion can be substantial evidence, an ALJ is not bound by the opinion of a non-examining physician designated by the Secretary in deciding whether or not an impairment equals a listed impairment. 20 C.F.R. § 416.927(f)(2)(i). The ALJ may, however, consider such an opinion. *Reynolds v. Secretary of Health & Human Servs.*, 707 F.2d 927, 930 (1933).

This Court finds that the ALJ appropriately considered the state agency psychologist's moderate limitations finding and accepted only the portion of the doctor's findings supported by other evidence in the record.

Dr. Benninger found that Forgette had a number of moderate functional limitations. According to Dr. Benninger, Forgette was capable of performing simple work activities in a routine and predictable work environment that did not involve significant public interaction. (Tr. 230-32.) The ALJ found that the public interaction portion of the assessment was not supported by the evidence. (Tr. 21-22.) Specifically, the ALJ noted that Forgette, ". . . worked with the public successfully as a telemarketer and at her Burger King job, and had consistently worked in contact with the public.[7] She has had more difficulty getting along with supervisors in the past." (Tr. 21, ¶ 3.) The ALJ accommodated Forgette's difficulty with supervisors by limiting her to

---

[7] The ALJ noted that despite Forgette's crying fits, frequent breaks at work and arguments with supervisors, she was offered promotions at both Burger King and the telemarketing job. (Tr. 460-61.)

unskilled work that did not involve close and critical supervisory demands, rapid pace, or functioning within close tolerances. (Tr. 20 and 475 -76.)

Despite Forgette's claims to the contrary, the ALJ considered Dr. Benninger's opinion in reaching his decision and adequately explained why he chose not to accept the public interaction portion of Dr. Benninger's assessment. These findings by the ALJ suggest that he considered the state agency physician's opinion consistent with the rules of construction for opinion evidence.

### 3. Credibility

Lastly, Forgette claims that the ALJ erred in using an impermissible rationale to find her "not entirely credible." It is for the Secretary and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weight and evaluate their testimony. *See Heston v. Commissioner*, 245 F.3d 528, 536 (2001). Moreover, credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004) (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Although an ALJ's credibility finding is entitled to great deference it must nonetheless be supported by substantial evidence. *See King v. Heckler*, 742 F.2d 968, 975 (1984) (an ALJ's adverse credibility finding was not supported by substantial evidence where the claimant's testimony was consistent with uncontradicted medical evidence).

When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to follow an outlined process for evaluating these symptoms. The ALJ must determine whether objective medical evidence supports the claimant's allegations regarding the disabling effects of

14

the impairment. *See Villareal*, 818 F.2d at 463 (6th Cir. 1987). If the ALJ finds that the objective medical evidence does not support the claimant's allegations, the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record. *Id.* In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record. *See* SSR 96-7p. In addition to the medical evidence, the ALJ should consider seven factors, as they may be relevant to a particular claim.[8] The ALJ need not analyze all seven factors, but should make clear that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

If the ALJ rejects a claimant's testimony as not being credible, the ALJ must clearly state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight. *Id.* at 733; SSR 96-7p; *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 94, 95 (6th Cir. 1987).

In the instant matter, the ALJ began his credibility analysis by offering that there may have been some exaggeration or false presentation on the part of Forgette and possibly her physicians, at the prospect of receiving disability benefits.[9] (Tr. 19.) The ALJ's analysis,

---

[8] The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 416.929 (c); SSR 96-7p.

[9] This assessment is supported by treatment notes like that of July 27, 2004, which provided that the staff person was "completing social security papers to ~~secure the clt's benefits~~ determine the clt's [sic] eligibility for benefits to help reduce the financial barriers clt's having."

however, did not stop there; he went on to discuss Forgette's impairments.

Following the first step outlined in 20 C.F.R. § 416.929, the ALJ found that although Forgette claimed a mental impairment that affects her ability to work, the "file supports a finding that her life has stabilized with supportive treatment and that she can work for extensive periods under favoring circumstances [Tr. 213, 281, 304, 367, 393]." (Tr. 19.)  Had the ALJ's analysis stopped there, it would have been deficient as Forgette claims.  If one reads further, however, on page 20 of the transcript the ALJ, in the next step of the outlined process, continued explaining why he found Forgette to be "not entirely credible."

In his continued analysis, the ALJ provided a brief discussion of Forgette's progression from being treated for depression by her primary care physician, to her brief hospitalization, to her subsequent follow up treatment at the Zepf Center.  The ALJ noted that throughout this progression, the contemporaneous treatment notes show that Forgette's "mood and energy stabilized and she had no more suicidal thoughts."  (Tr. 20.)  Also, Forgette's irritability decreased and by January of 2004, Forgette told staff at the Zepf Center that her psychological symptoms were not interfering with daily activities.  (Tr. 199.)  The ALJ further notes that

Forgette seemed more depressed when it was advantageous to her disability claims;[10] Forgette's

---

Tr. 376 (Edits in the original).  The stricken language obviously indicates a staff person's intention to help Forgette "secure benefits."  Moreover, many of the other treatment notes highlight Forgette's financial hardships and her repeated statements to Zepf staff persons that she could not work. (Tr. 188, 199, 201, 204, 205, 376.)

[10]  "It appears that the claimant complained of more symptoms than normal for her each time she asked Dr. Funke to complete disability forms because the claimant is described by Dr.

16

medication was increased (Tr. 184, 188); Forgette had no negative side effects from her combination of medicines; and more recent treatment records from the Zepf Center showed continued improvement as Forgette started working more in 2005.  (Tr. 275-324, 362-93.)

The ALJ compared, the treating physician's contemporaneous treatment notes with that same physician's August 2006 opinion, which indicated that Forgette had several areas of marked limitation.  The ALJ made the observation that the severity of limitation in the August 2006 report was inconsistent with the treating physician's own contemporaneous treatment notes and with Forgette's testimony of her improved functioning.  The ALJ found that Forgette's claim that her mental impairments do not allow her to work is not entirely credible because the objective medical evidence does not support Forgette's allegations.  And further, after reviewing and analyzing the relevant evidence, the ALJ provided adequate reasons for not finding Forgette "entirely credible."  Although the ALJ did not detail each of the seven factors, he considered the relevant evidence while following the process outlined in 20 C.F.R. § 416.929.  *See also Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

Therefore, this Court defers to the ALJ's determination of credibility as it is not unreasonable or unsupported by substantial evidence.

## V. Conclusion

For the foregoing reasons, this Court recommends that the ALJ's decision be affirmed and the referral to this Court be terminated.

---

Funke [or staff] as bright, pleasant, with good sleep, energy and concentration and stable mood on other visits with no need to change her treatment plan. [Tr. 387-88, 391]."  (Tr. 21.)  Further, the ALJ found that it appeared Forgette was more depressed in May of 2004 when she was denied DIB and SSI and also in July of 2004 when she wanted her psychiatrist to complete more disability paperwork.  (Tr. 188, 376.)

Dated: January 29, 2009 /s/Benita Y. Pearson
Benita Y. Pearson
United States Magistrate Judge

## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

18